USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 5 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MILLS 2011 LLC,

      Plaintiff,

  -v-

SYNOVUS BANK,

      Defendant.
------------------------------------------------------------ X

12 Civ. 6158 (AJN)

OPINION

ALISON J. NATHAN, District Judge:

  Defendant Synovus Bank removed this matter to this Court from state court on August 10, 2012. (D.E. 1). Synovus Bank has now moved to dismiss this case due to lack of personal jurisdiction or, in the alternative, to transfer it to the Northern District of Georgia under 28 U.S.C. § 1404(a). (D.E. 4). Plaintiff Mills 2011 LLC ("Mills") opposes these requests and, in its opposition, argues that the case should be remanded to state court due to lack of diversity jurisdiction. (D.E. 21).

## I. BACKGROUND

  Mills alleges in its Complaint that in December 2011 it purchased eight secured loans from Synovus Bank. (Compl. ¶¶ 9-10). Among other things, the relevant documents underlying the sale of these loans provided specific representations and warranties, including that all of the documents pertaining to those loans had been identified in an exhibit to the sales contract, and that no loan was cross-collateralized or cross-defaulted with any other loan owned by Synovus Bank or its affiliates. (Compl. ¶¶ 14). Mills alleges that Synovus Bank breached these representations and warranties, and now brings claims for breach of contract, breach of

1

representations and warranties, breach of the implied covenant of good faith and fair dealing, and specific performance. (Compl. ¶¶ 15-59).

## II. ANALYSIS

Subject matter jurisdiction in this action is premised on diversity of citizenship. (Not. of Removal ¶ 3). Courts have an independent obligation to determine whether subject matter jurisdiction exists. *Arbaugh v. Y&H*, 546 U.S. 500, 514 (2006). As such, the Court must consider whether it has such jurisdiction over this matter, or whether the case should be remanded to State court.

To remove a case to federal court based on diversity jurisdiction, the defendant must aver that all of the requirements of diversity jurisdiction are met, including complete diversity of citizenship. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). In the case of a limited liability company, such citizenship is determined by the citizenship of natural persons who are members of the limited liability company and the place of incorporation and principal place of business of any corporate entities that are members of the limited liability company. *See Handelsman v. Bedford Vill. Assoc. Ltd. P'Ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (citing *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)); *Strother v. Harte*, 171 F. Supp. 2d 203, 205 (S.D.N.Y. 2001) ("For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members."); Fed. R. Civ. P. 8(a).

The Notice of Removal alleges that Mills is "a Limited Liability Company (LLC) incorporated under the laws of the state of Delaware, with its principal place of business in the State of New York," and additionally alleges that Synovus Bank is "not aware of any members [of Mills] being citizens of Georgia such that complete diversity of citizenship would be affected." (Not. of Removal ¶¶ 9-10; *see also* Compl. ¶ 5 ). It further alleges that Synovus Bank

2

is "a corporate citizen of the State of Georgia, incorporated under the laws of Georgia, with its principal place of business in the State of Georgia." Plaintiff now argues that one of the members of Mills is a Georgia citizen, and that the parties are therefore non-diverse for purposes of subject matter jurisdiction. (Opp. at 9-13). In resolving whether the Court has subject matter jurisdiction, the Court is permitted to refer to evidence outside the pleadings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Here, Mills contends that the requirements of diversity jurisdiction are not met because, tracing the extended chain of membership in Mills demonstrates that one or more of the members of its parent organizations is a citizen of the State of Georgia and, therefore, Mills and Synovus Bank are both Georgia citizens. (Opp. at 1-3, 10-11). Specifically, Mills notes that its sole member is Able Trust 2011-1. (Harris Decl. ¶¶ 1, 4). Able Trust 2011-1's sole beneficiary is, in turn, Able 2011 LLC. (Harris Decl. ¶ 5). Arguing that the Court should look to the citizenship of this beneficiary (Able 2011 LLC) to determine the citizenship of Able Trust 2011-1 and, by extension, of Mills, Mills points out that by tracing the long chain of ownership interests in Able 2011 LLC, the Court eventually comes to FAM Opportunity Fund, LLC ("FAM") which has a number of members who are Georgia citizens. (Harris Decl. ¶¶ 12-17; Eisenberg Decl. ¶ 3).[1]

Synovus Bank responds that Mills is wrong in urging the Court to look to the beneficiaries of Able Trust 2011-1 in determining the citizenship of that trust. (Reply at 3-10). Rather, Synovus Bank points to the Supreme Court's decision in *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980), and argues that it is the citizenship of the trustees of Able Trust 2011-1, not the

---

[1] In brief: an ownership interest in Able 2011 LLC is held by GOF II NON RE LO LLC ("GOF II"); an ownership interest in GOF II is held by GOF II A Series LLC ("GOF II A"); the sole member of GOF II A is Garrison Opportunity Fund II LLC ("Opportunity Fund"); FAM is a member of Opportunity Fund; and, finally, some members of FAM are Georgia citizens. (Harris Decl. ¶¶ 12-17; Eisenberg Decl. ¶ 3).

3

citizenship of the beneficiaries of that trust, that is relevant to the present inquiry. Mills disputes this reading of *Navarro*, pointing to other Supreme Court precedent, and contends that the Court must look to the citizenship of the beneficiaries of Able Trust 2011-1 to determine the citizenship of the trust. Thus, the Court's first task is to determine the proper test for establishing the citizenship of a trust for diversity purposes.

### A. Citizenship of Trusts for Diversity Purposes

In *Navarro*, eight trustees of a business trust organized under Massachusetts law brought suit in federal court on the basis of diversity jurisdiction, contending that they were entitled to invoke that jurisdiction on the basis of their own citizenship rather than the citizenship of the beneficiaries of the trust. *See id.* at 458-59. The trustees were granted substantial powers by the declaration of trust, including exclusive authority over the corpus of the trust, as well the powers to transact business, execute documents, sue and be sued in the name of the trust or in their own names, invest funds, lend money, and initiate compromise lawsuits relating to the trust's affairs. *See id.* at 459. The Court, faced with the petitioner's argument that the real parties to the lawsuit for diversity purposes were the trust's beneficiaries, characterized the question before it as "whether [the] trustees are real parties to this controversy for purposes of a federal court's diversity jurisdiction." *Id.* at 461-62.

After reviewing its precedent on the subject and Federal Rule of Civil Procedure 17(a), the Court held the trustees in *Navarro* "are real parties to the controversy" who were "permitted . . . to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 465-66. In reaching this conclusion, the Court relied on the powers granted to the trustees to conclude they were "active trustees whose control over the assets held in their names is real and substantial" rather than "naked trustees" who act as mere conduits for a remedy flowing to

4

others. *Id.* at 465.

A number of Circuit Courts of Appeals have cited *Navarro* for the broad proposition that the citizenship of a trust is determined by its trustees. *See Mullins v. TestAmerica Inc.*, 564 F.3d 386, 397-98 & n.6 (5th Cir. 2009); *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347-48 (7th Cir. 2006) ("The citizenship of a trust is that of the trustee"); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("A trust has the citizenship of its trustee or trustees."); *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 Fed. Appx. 731, 732 (6th Cir. 2002) (unpublished); *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317-319 (7th Cir. 1998). Synovus Bank relies on these cases to argue that this issue is settled and that the Court should look only to the citizenship of the trustee in assessing diversity jurisdiction. In particular, Synovus Bank has pointed to language in one Second Circuit opinion to the effect that "[f]or purposes of diversity jurisdiction, the citizenship of the fiduciary—not the beneficiary—generally controls." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 123-24 (2d Cir. 2008).

The difficulty with this approach is that it does not acknowledge the Supreme Court's decision in *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). In that case, the Court was confronted with the question of "whether, in a suit brought by a limited partnership, the citizenship of the limited partners must be taken into account to determine diversity of citizenship among the parties." *Id.* at 186. Specifically, the Fifth Circuit had found complete diversity of citizenship, holding that the citizenship of the limited partnership at issue should be determined based on the citizenship of the general partners, but not the limited partners. *Id.* at 187. The Supreme Court reversed. *Id.* at 198.

The Court concluded that a limited partnership—unlike a corporation—should not be

considered a citizen of the State under whose laws it was created, noting that their precedent had "firmly resisted" extending that treatment to entities other than corporations. *Id.* at 187-89. In the course of this discussion, the Court rejected the argument that *Navarro* embodied an exception to this general rule, explaining that *Navarro* "did not involve the question whether a party that is an artificial entity other than a corporation can be considered a 'citizen' of a State, but the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." *Id.* at 191. Rather, according to the Court in *Carden*, the decision in *Navarro* was merely directed toward establishing that the trustees, as active trustees with real and substantial control over the trust assets, were real parties in interest and could therefore sue in their own right. *Id.* at 191-92.

The Supreme Court reiterated this point unequivocally in considering the specific question of whether citizenship of a limited partnership should be determined only by reference to the citizenship of the general partners, without regard to the citizenship of the limited partners. *Id.* at 192-96. Addressing the argument that *Navarro* "looked to the trustees to determine the citizenship of the business trust" and that the Court should therefore look to only the general partners in determining its citizenship of a partnership, the Court explained that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Id.* at 192-93. Ultimately, the Court rejected the contention that citizenship of an artificial entity, for diversity purposes, can be determined by looking to "less than all of the entity's members" and held that such citizenship depends on the citizenship of "'all of the members,' 'the several persons composing such association,' 'each of its members.'" *Id.* at 195-96 (citations omitted).

In short, *Carden* makes clear that *Navarro* did not speak to the issue of the citizenship of

a trust. Rather, *Navarro* was concerned with the narrower question of whether, when a group of trustees sue in their own name, they are "real parties to the controversy" such that their citizenship is relevant for diversity purposes. Indeed, a number of courts have recognized that *Navarro* does not resolve the issue before the Court—the test governing the citizenship of a trust. *See Ravenswood Inv. Co. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1221-22 & n.1 (10th Cir. 2011) (noting that the question before the Court was merely who was the real parties to the controversy and "[t]here is no occasion in this case to decide if and under what circumstances beneficiaries' citizenship may affect a trust's citizenship for the purposes of the diversity analysis."); *Emerald Investors Trust v. Gaunt Parsippany Ptnrs*, 492 F.3d 192 (3d Cir. 2007); *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334, 1337-40 (11th Cir. 2002) (discussing this issue and concluding that the citizenship of the beneficiaries controls the citizenship of the trust) *abrogated in part on other grounds as noted in Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348 (11th Cir. 2008); *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1371 (10th Cir. 1998) (noting the distinction, based on *Carden*, between cases in which the citizenship of the trust is at issue and cases controlled by *Navarro* where the suit is brought in the name of the trustees); *cf. also RTC Commer. Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 451-52 (7th Cir. 1999) (looking to the citizenship of equity interest holders in a trust in assessing diversity jurisdiction, but not analyzing the issue); *Ibanez v. United States Bank Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 136632, at *5-6 (D. Mass. Nov. 29, 2011); *Bergeron v. Ridgewood Elec. Power Trust V*, 2007 U.S. Dist. LEXIS 48555, at *6-9 (D. Mass. July 5, 2007); *Mecklenburg County v. Time Warner Entm't-Advance/Newhouse P'ship*, 2010 U.S. Dist. LEXIS 6215, at *10-11 (W.D.N.C. Jan. 26, 2010).

With this in mind, the decisions relied on by Synovus Bank begin to look far less

appealing. The courts cited above that have concluded that the citizenship of a trust turns exclusively on the citizenship of its trustees have not been presented with the question now before the Court because the trustees have sued in their own names, *see, e.g.*, *Catskill*, 547 F.3d at 123-24, or have failed to squarely address the question and instead relied, without analysis, on *Navarro* as controlling, *see Mullins*, 564 F.3d at 397-98 & n.6; *Hicklin Eng'g*, 439 F.3d at 347-48; *Johnson*, 437 F.3d 894, 900; *Homfeld II.*, 53 Fed. Appx. at 732.

With respect in particular to the Second Circuit's decision in *Catskill*, 547 F.3d at 123-24, containing the broad language quoted above, that case did not consider *Navarro* or *Carden* in any detail. Moreover, the issue presented in *Catskill* was the narrow issue presented in *Navarro*: the Court of Appeals' decision was made as regarding an "action by the trustees" in their own name, and the question was whether they were the real parties to the controversy. *See id.*[2] The same is true of the Second Circuit's decision in *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998), as that case was concerned with establishing which of certain Lloyd's underwriters were the "real parties to the controversy" for diversity purposes under *Navarro*, *see id.* at 930, and therefore relied on *Navarro* without being confronted with the issue posed here. *Accord Indiana Gas Co.*, 141 F.3d at 317-19 (considering the same issue).

The Third Circuit in *Emerald*, has considered in detail the question now before the Court. After reviewing the Supreme Court's decisions in *Navarro* and *Carden*, the Third Circuit

---

[2] The two other cases cited in *Catskill* supporting its generalization that the citizenship of the trustees controls the citizenship of the trust also do not answer the question before the Court. To begin with, both are pre-*Navarro* cases. More specifically, as to *Dodge v. Tulleys*, that suit was in the name of the trustee, and thus presented the issue discussed in *Navarro*, not question at issue here. *Dodge v. Tulleys*, 144 U.S. 451, 455-56 (1892) ("The suit is in the name of Tulleys, trustee, to whom the legal title was conveyed in trust, and who was, therefore, the proper party in whose name to bring suit for foreclosure. . . . The fact that the beneficiary in a trust deed may be a citizen of the same State as the grantor, would not, if the trustee is a citizen of a different State, defeat the jurisdiction of the Federal court."). *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1032 (2d Cir. 1969), involved the administrator of an estate rather than a trust, and also appears to have been brought in the administrator's name.

explained that, in light of those cases, the Supreme Court has established the following rules:

> In a suit by or against the individual trustees of a trust, where the trustees "possess[] certain customary powers to hold, manage and dispose of assets," their citizenship, and not that of the trust beneficiaries, is controlling for diversity of citizenship purposes. The rule, however, is different when an artificial entity sues or is sued in its own name. In that situation, because artificial entities, unlike corporations, are not "citizens" under 28 U.S.C. § 1332, diversity jurisdiction by or against an artificial entity depends on the citizenship of "all the members."

*Emerald*, 492 F.3d 192, 200-01 (citations omitted). The Third Circuit then went on to discuss the options available for resolving the citizenship of a trust which has brought suit in its own name: "(a) look to the citizenship of the trustee only; (b) look to the citizenship of the beneficiary only; (c) look to the citizenship of either the trustee or the beneficiary depending on who is in control of the trust in the particular case; or (d) look to the citizenship of both the trustee and the beneficiary." *Id.* at 201.

The Third Circuit rejected the first option, looking only to the citizenship of the trustee, as based on the inaccurate reading of *Navarro* that was rejected by *Carden*. *See id.* Indeed, the Third Circuit considered a number of the cases discussed above that have relied on *Navarro* and rejected their approach, holding that "Navarro simply does not say that the citizenship of a trustee determines the citizenship of a trust" and simply does not address the question of "the citizenship of an entity when the entity itself is a party to the action." *Id.* at 201-02 (citing and declining to follow *Hicklin Eng'g*, 439 F.3d at 348; *Johnson*, 437 F.3d 894, 899; *Indiana Gas Co.*, 141 F.3d at 318. Moreover, this approach is counter to the Supreme Court's admonition in *Carden* to consider the citizenship of all of the members of an artificial entity in determining the citizenship of that entity. *See id.*

Likewise, *Emerald* declined to look to the citizenship of the beneficiary only— notwithstanding an Eleventh Circuit case taking this position—for similar reasons. In particular,

9

this approach could lead to an "untoward result" counter to the purposes of diversity jurisdiction in cases where the trustee controlled the trust because "in that situation it is logical to think that if the trust had a local advantage or faced a local prejudice it would be on the basis of the identification of the trustee not the beneficiary." *Id.* at 202. Furthermore, this approach also would run counter to *Carden*'s admonishment to consider "all of the members" of an artificial entity for purposes of diversity jurisdiction.[3]

The third approach, advocated by Wright and Miller's treatise on federal practice, is to conduct a case-by-case analysis as to the structure of the trust, considering whether the trustee is "active" or "passive." *See id.* at 202-03; CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3606 (3d ed. 2009) ("The citizenship of an active trustee, rather than that of the beneficiaries or of the grantor, is decisive, but again a different result is reached with regard to a passive trustee who has only a naked legal title to the property in dispute."). As the Third Circuit pointed out, however, this approach places a "great and unnecessary burden" on the court and litigants in assessing diversity jurisdiction and is counter to the principle that jurisdictional rules should generally be simple and clear.[4] *See Emerald*, 492 F.3d at 202-03.

In addition, the case-by-case case approach advocated by Wright and Miller runs afoul of *Carden* to the extent that it essentially adopts the "real party to the controversy" test rejected by that decision. The majority in *Carden* expressly held that the dissent's contention that the court should determine the citizenship of a limited partnership by looking to the "real party to the

---

[3] The Court notes that, even if this rule were adopted, diversity jurisdiction would not lie in this case.

[4] Indeed, even in *Navarro* the Supreme Court suggested that complicated rules requiring extensive litigation regarding jurisdiction are disfavored because "'[j]urisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources.'" *Navarro*, 446 U.S. at 465 n.13 (quoting Currie, *The Federal Courts and the American Law Institute, Part I*, 36 U. CHI. L. REV. 1 (1968)); *see also Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1193 (2010).

10

controversy"—an approach arguably suggested by *Navarro*'s distinction between active and passive trustees—was not supported by precedent. *See Carden*, 494 U.S. at 193-95. Adopting the Wright and Miller case-by-case analysis would therefore fail to recognize *Carden*'s explanation of the limited issue decided in *Navarro*.

Having noted the drawbacks of each of the other approaches, the court in *Emerald* explained why the remaining approach—what it termed the "dual trustee-beneficiary approach" of looking to the citizenship of both the trustee and beneficiary—was appropriate. First, the Third Circuit explained that this approach contradicted neither *Navarro* nor *Carden*:

> *Navarro* is not implicated because it dealt with a situation in which the trustees brought the action in their own names, a situation different from that here in which the trust is the plaintiff. Moreover, the dual trustee-beneficiary rule does not offend *Carden* . . . because the dual approach asks a court to look at the citizenship of all of the "members," at least the beneficiary of the "artificial entity," and merely directs a court to look at the citizenship of the trustee as well.

*Emerald*, 492 F.3d at 203. Second, it avoided illogical outcomes that could be presented by the first or second options while avoiding the burdensome case-by-case analysis presented by the third option. *See id.* at 203-04. Third, and most importantly, the *Emerald* court noted that this approach accommodated federal concerns attendant to the extension of diversity jurisdiction and the corresponding encroachment of the federal courts into the prerogatives of the state judiciary. *Id.* at 204 ("Since conflict resolution constitutes one of the core public functions of state government, the exercise of diversity jurisdiction necessarily encroaches, in some fashion, on the ability of the states to engage in this traditional activity." (quoting *Carlsberg Resources Corp. v. Cambria Sav. & Loan Assoc.*, 554 F.2d 1254, 1256 (3d Cir. 1977))); *see also Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 76-77 (1941) ("The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business

11

that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business.").

The Court finds the decision in *Emerald* well reasoned and, in light of the Court's conclusion that the Second Circuit has not spoken on the question before it, believes that it states the correct rule regarding the citizenship of trusts for diversity purposes. Moreover, in addition to the reasoning expressed in *Emerald*, the following further points also support adopting the "dual trustee-beneficiary approach."

First, to the extent that the Court might be tempted to look only to the citizenship of the trustees on the theory that they may be the individuals controlling the trust, as already noted, *Carden* rejected a test of citizenship for diversity purposes based on an inquiry into who are the real parties to the controversy. *See Carden*, 494 U.S. at 193-95. In particular, the dissent in *Carden* analyzed the limited powers afforded to a limited partner—and, in fact, specifically compared them to the beneficiary of a trust—and concluded that limited partners were not relevant to the citizenship of a limited partnership because the general partners held control over management of the entity. *See id.* at 205-06 (O'Connor, J., dissenting). That the majority in *Carden* expressly rejected this analysis suggests that the Court should follow a similar approach here.

Second, the purpose of diversity jurisdiction is to avoid the bias that may be felt in state court in favor of in-state parties (or against out-of-state parties). *See Guaranty Trust Co. v. York*, 326 U.S. 99, 111-12 (1945). To this end, Courts have suggested that the rule requiring complete diversity is appropriate because the presence of state citizens on opposite sides of a case tends to neutralize any such local bias. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 561-62 (2005); *Tango Music, L.L.C. v. Deadquick Music, Inc.*, 348 F.3d 244, 245-46 (7th Cir. 2003);

*Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 229 (S.D.N.Y. 1994). To the extent that a trust which is a party to a litigation has beneficiaries who reside in the forum state, this likewise would tend to mitigate concerns of local bias, and thus the "dual trustee-beneficiary approach" comports with the purposes of the complete diversity requirement.

Finally, this approach is also consistent with the decisions of several courts in the Second Circuit that have held that in assessing the citizenship of a trust, courts are to look to the citizenship of "all members" of the trust, including the beneficiaries. *See Arias v. Budget Truck Trust I*, 2009 U.S. Dist. LEXIS 18706, at *1-2 (E.D.N.Y. Mar. 5, 2009) (noting that "the great weight of recent authority" supported the holding that the citizenship of all of the trust's beneficiaries must be alleged to demonstrate diversity of citizenship"); *FMAC Loan Receivable Trust 1997-C v. Strauss*, 2003 U.S. Dist. LEXIS 6093, at *1-3 (S.D.N.Y. Apr. 14, 2003) (holding that "*Carden* controls this case" and diversity was insufficiently pleaded absent allegations regarding the "member[s], beneficiar[ies], or shareholder[s] of the plaintiff business trusts"); *Pavlov v. Bank of N.Y. Co.*, 135 F. Supp. 2d 426, 432 (S.D.N.Y. 2001) (noting that "the trustee has not sued in his own name" and that the allegations that did not address the "members or beneficiaries" of the trust failed to adequately plead jurisdiction); *cf. Bank of Am., N.A. v. 3301 Atl.*, 2012 U.S. Dist. LEXIS 90928, at *1-2, *11-13 (E.D.N.Y. June 29, 2012) (suit brought in name of trustee; therefore *Navarro* controls); *Quantlab Fin., LLC v. Tower Research Capital, LLC*, 715 F. Supp. 2d 542, 546-49 (S.D.N.Y. 2010) (explaining that *Navarro* and *Squibb* do not address how to analyze the citizenship of a trust and that *Carden* casts doubt on reliance on *Navarro* for this point, and favorably citing *Emerald*); *Wells Fargo Bank, N.A. v. Konover*, 2009 U.S. Dist. LEXIS 74873, at *10-11 (D. Conn. Aug. 21, 2009) (citing *Emerald* favorably, but noting that the issue was not squarely presented because the suit was brought in the name of the

trustee).

## B. Jurisdictional Discovery

Applying the test articulated above, and based on Mills' submission to the Court, subject matter jurisdiction in this case is likely lacking, as it appears that—through its chain of ownership—Mills is a Georgia citizen. However, Synovus Bank urges the Court to grant an opportunity for limited jurisdictional discovery because it has not had a chance to challenge the accuracy of the materials Mills has submitted to the Court. (Reply at 9).

The Court has authority to order jurisdictional discovery to allow Synovus Bank the opportunity to demonstrate subject matter jurisdiction. *See Greystone Bank v. Tavarez*, 2010 U.S. Dist. LEXIS 85462, at *4(E.D.N.Y. Aug. 16, 2010) (noting that a district court retains considerable latitude in devising the procedure it will follow to ferret out the facts pertinent to jurisdiction where a factual challenge to jurisdiction were made); *Ayyash v. Bank Al-Madina*, 2006 U.S. Dist. LEXIS 9677, at *17-18 (S.D.N.Y. Mar. 9, 2006). The Second Circuit has held that courts should afford ample opportunity to secure and present evidence relevant to the existence of jurisdiction. *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (reviewing decision denying jurisdictional discovery related to standing). Courts have allowed jurisdictional discovery where there has been a threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction. *Ayyash* 2006 U.S. Dist. LEXIS 9677, at *17-18.

Synovus Bank has not presented any facts from which the Court can conclude it has a colorable claim to jurisdiction. Rather, it offers only the bare assertion that it has not yet had the opportunity to test the facts in the sworn declarations provided by Mills, without raising any basis to conclude those declarations are not accurate or that there are any facts supporting the

14

exercise of jurisdiction. In fact, Synovus Bank has not adequately alleged jurisdiction in its Notice of Removal—indeed, this would be true even if the Court had adopted Synovus Bank's position regarding how to determine the citizenship of Able Trust 2011-1. (Not. of Removal ¶¶ 9-10).

As such, before the Court will order any jurisdictional discovery, Synovus Bank must amend its Notice of Removal to allege a good-faith basis for diversity jurisdiction and, through a letter brief no longer than five pages, state the facts underlying its basis for believing it has a colorable claim to diversity jurisdiction in federal court. The Court will allow three weeks from the date of this Order to do so; failure to timely amend or submit this letter will result in the immediate remand of this matter to the Supreme Court of New York, New York County. Mills may submit a response, also no longer than five pages, to any letter submitted by Synovus Bank no later than seven days after the submission of Synovus Bank's letter.

Because it is not clear that this Court has subject matter jurisdiction, the Court will not address at this time Synovus Bank's motion to dismiss this case due to lack of personal jurisdiction or, in the alternative, to transfer it under 28 U.S.C. § 1404(a). This motion, docket number 3, is administratively DENIED without prejudice to refile in the event that Synovus Bank demonstrates that this action is within the scope of the subject matter jurisdiction of the federal courts.

Dated: February 5, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Court Judge